UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ROBERT BURKE,

        Plaintiff,

vs.                                    Case No.  2:09-cv-635-FtM-29SPC

NATASHA HAYNES; TST, Therapeutic
Security    Technician,    FCCC,
TIMOTHY BUDZ, Executive Director,
FCCC,  DR.  GEORGE  EMANOILIDIS,
Assistant    Clinical    Director,
FCCC,   FNU   SPISSINGER,   GEO
Captain, FCCC, DAVID DIXON, GEO
Investigator, OFFICER QUICK, GEO
Officer,  FCCC  and  JANE  DOE,  GEO
Officer, FCCC,

        Defendants.[1]

_____

**OPINION AND ORDER**

**I.**

This matter comes before the Court upon Defendants' Motion to Dismiss Amended Complaint filed on behalf of Defendants Budz and Dixon (Doc. #48, Budz/Dixon Motion).  Defendants Budz and Dixon seek dismissal of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Despite being afforded

---

[1]As of the date of this Order, service has not been effectuated upon Defendants Spissinger, Quick and Jane Doe. See Docs. ##26-28, ##32-34 and ##42-43. These unserved Defendants are subject to dismissal pursuant to Fed. R. Civ. P. 4(m). Nonetheless, because Plaintiff is proceeding *in forma pauperis*, the Court *sua sponte* reviews the action pursuant to 28 U.S.C. § 1915(e)(2)(B) as to these unserved Defendants.

additional time,[2] Plaintiff has not filed a response in opposition

to Defendants Budz and Dixon's Motion and the time for doing so has

expired.   Also pending before the Court is Defendant Emanoilidis'

Motion to Dismiss Plaintiff's Due Process Claim in Paragraph 2 of

His "Statement of Claims" (Doc. #49, Emanoilidis Motion).[3]

Plaintiff filed a response to Defendant Emanoilidis' Motion (Doc.

#56, Pl. Response to Emanoilidis Motion).   These matters are ripe

for review.

**II.**

Plaintiff, who is civilly committed to the Florida Civil

Commitment Center ("FCCC") pursuant to Florida's Involuntary Civil

Commitment of Sexually Violent Predators Act, §§ 916.31-916.49,

Florida Statutes, has pending before the Court a Civil Rights

Complaint (Doc. #1, Complaint). Liberally construed, the Complaint

alleges three claims: (1) a First Amendment retaliation claim and

Fourteenth Amendment claim against Defendant Haynes stemming from

Plaintiff filing grievances concerning other FCCC residents'

smoking; (2) a Fourteenth Amendment procedural due process claim

against Defendants Quick, Jane Doe, Emanoilidis, Budz, Spissinger,

and Dixon stemming from Plaintiff's placement in segregation; and

---

[2]On November 29, 2011, the Court granted Plaintiff a sixty (60)
day extension of time to file a response to the Motion.  See Doc.
#52.  On February 2, 2012, the Court again granted Plaintiff an
additional twenty-one (21) day extension of time.  See Doc. #60.

[3]Defendant Emanoilidis filed an Answer and Affirmative Defenses
"as to Paragraph 3 Statement of Claims." See Doc. #46.

(3) a Fourteenth Amendment substantive due process claim against Defendants Emanoilidis, Budz, Spissinger, Quick, Jane Doe and Dixon stemming from Plaintiff's placement in segregation.  Complaint at 3-4.  The following pertinent facts, which are accepted as true at this stage of the proceedings, are alleged in support of Plaintiff's claims.

Plaintiff spoke with Defendant Budz on August 13, 2009 complaining that "staff was doing a lousy job" enforcing the non-smoking rule implemented at the FCCC.  Id. at 5, ¶1.  Plaintiff filed numerous grievances with FCCC staff concerning the smoking issue.  Id., ¶2-3.  On August 14, 2009, Plaintiff verbally advised Defendant Haynes that residents were smoking in the dormitory. Id., ¶4.  Plaintiff showed Haynes a copy of a grievance in which Defendant Budz wrote "I agree that the non-smoking rule must be enforced.  Please inform staff if you observe anyone smoking."  Id. After exchanging words  with Plaintiff, Defendant Haynes "yelled out into a dorm of forty sexually violent predators that [Plaintiff] was snitching on residents smoking in the dorm."  Id. Immediately thereafter, several residents called Plaintiff a "snitch" and made threatening remarks to and gestures at Plaintiff. Id. at 6, ¶¶5-6.

Plaintiff went to Dr. Emanoilidis' office, reported the incident, expressed his concerns over being labeled a "snitch," and requested that Haynes be "terminated."  Id. at 6-7, ¶8.  Dr.

Emanoilidis "listened" to Plaintiff's complaint about Haynes' conduct, stated that he needed to report the allegations to Haynes' supervisor, would request that the incident be investigated, and agreed to speak to Plaintiff about his findings the following week. Id. In response to Defendant Emanoilidis' questioning as to whether Plaintiff was "comfortable" going back to his dorm and having Haynes supervise the dorm, Plaintiff stated "I'll stay where I am at for the time being." Id. Defendant Emanoilidis also placed Plaintiff's name on the list "to get a room in the honor dorm Gulf." Id.

Plaintiff "believe[s]" Defendant Emanoilidis immediately contacted Haynes' supervisor, because when he returned to his dorm Haynes was "assigned to a different dorm." Id. at 8, ¶¶ 9-10. Nonetheless, Haynes left her post and returned to Plaintiff's dorm, inciting the residents and telling them that she would get Plaintiff removed from her assigned dorm. Id.

On August 17, 2009, after eating and watching television, Plaintiff returned back to his dorm room. Id., ¶11. Plaintiff was lying on his bed reading when Defendants Quick and Jane Doe came into the dorm. Id. A resident yelled to them to "get that snitch out of here." Id. Defendant Jane Doe told Plaintiff that they were there to "shake down #343," and Plaintiff told her that they were in room "#323." Id. Defendant Jane Doe "corrected herself"

and Plaintiff consented to the two officers searching his room. Id.

   After patting Plaintiff down, Defendant Quick went over to Plaintiff's bed, lifted up the mattress, and pulled out "a plastic imitation of a knife that someone sharpened." Id., ¶12. Plaintiff denied any knowledge of the knife and told the officers he believed the knife had been planted by one of the residents against whom he had filed a grievance about smoking. Officer Jane Doe advised Plaintiff that they received a tip from another resident about the knife and where it was located. Id., ¶13. As Plaintiff was pointing out that he had "locked containers" in his room, which was a more likely place to hide the knife if it was his, residents in the dorm started "chanting 'get that snitch outa' here.'" Id. As Plaintiff left with the officers, a resident nicknamed "Spider" stated "get the f**k out of here or I'll put the f***king knife in your back and twist it myself." Id. Plaintiff was charged with being in possession of a weapon. Id. at 9, n. 1.

   Plaintiff was taken to Defendant Captain Spissinger by Officers Quick and Doe. Id. at 10, ¶14. The two officers confirmed the chanting about Plaintiff being called a "snitch" and the threat made to Plaintiff. Id. Spissinger ordered that Plaintiff be taken to medical and then placed in "punitive segregation." Id.

At midnight that night, Defendant Dixon, the security investigator, came to see Plaintiff and presented Plaintiff with "a behavior management form." Id. at 11, ¶18. Plaintiff was advised that the infraction "was a major rule violation and required secure management." Id. Dixon asked Plaintiff the following questions: (1) whether he wanted to waive his due process rights to a hearing; (2) whether he wanted to be present for the hearing; (3) whether he wanted staff assistance; (4) whether he had any witnesses; (5) whether he had any documentation or evidence; and, (6) whether he wanted to sign the form. Plaintiff answered in the affirmative to questions 2, 3, 4 and 5 and negative to questions 1 and 6. Id.

On August 18, 2009, Plaintiff wrote several communication forms to Mr. Reynolds, the clinical team leader for Saturn Dorm; Ms. Schau, "assigned clinical personnel"; and, Defendant Emanoilidis, requesting that they come to see Plaintiff in confinement. Id. at 12, ¶20. Plaintiff also asked Defendant Snyder to review the camera evidence and vestibule of the Saturn dorm from August 17th, to determine if anyone entered Plaintiff's dorm room. Id., ¶21. Plaintiff remained in confinement until August 26, 2009, during which time no hearing was held. Id., ¶22. Plaintiff was placed on wing restriction[4] for two weeks after his release from confinement. Id., ¶22, ¶26.

---

[4]It appears that Plaintiff was required to be handcuffed while on wing restriction, if he left the housing wing, such as when receiving therapy. See id., ¶22.

On September 11, 2009, Plaintiff was given the option of going back to secure management confinement or returning to open population. Id. at 13, ¶25. On September 11, 2009, Plaintiff elected to return to open population and was moved to the Paris dorm. Id.

On September 15, 2009, a non-Paris resident pointed to Plaintiff and stated "they moved the snitch next to you." Id. Plaintiff then went to see Defendant Emanoilidis to inquire about the status of the Haynes incident. Id. Defendant Emanoilidis denied any knowledge of the Haynes' investigation or its status. Id. Plaintiff complained that due to Haynes labeling Plaintiff a snitch there was no where he could go in the facility and be safe. Id. Defendant Emanoilidis advised Plaintiff which dorms were available and asked him if he wanted to be moved. Id.

In October 2009, Plaintiff met with various FCCC officials, who are not named as defendants in the instant action, concerning the Haynes' incident and his improper placement in disciplinary management. Id. at 15-16. The officials advised Plaintiff that his allegations were deemed to be unfounded. Id. at 15, ¶29. On November 9, 2009, Defendant Budz "denied" Plaintiff's grievance with "no further comment." Id. at 16-17, ¶¶35-36. Plaintiff continued to appeal the denial of his grievance with GEO Corporation officials. Id. at 17, ¶¶37-39.

On February 23, 2010, FCCC Officers Polk, Taylor, and Hamilton who are not named as Defendants, "shook Plaintiff's property down and wrote out an incident report for Plaintiff being in possession of broken wires and an altered CD player." Id., ¶40. Plaintiff grieved the incident claiming it was in retaliation for him reporting the Haynes' incident. Id., ¶41. On February 24, 2010, Plaintiff received formal Notice of the disciplinary infraction and was then asked his "due process questions" and "instructed" to sign the form. Id. at 18, ¶42.

Plaintiff's hearing on the rule infraction, concerning the items seized in the February 23, 2010 shake down, was held on March 2, 2010. Id., ¶44. Defendant Emanoilidis was one of the FCCC officials who presided over the hearing. Id. The hearing became heated with Plaintiff insisting that having "small electrical components around was simply a hobby to keep him occupied." Id. Plaintiff argued that prohibiting him from doing his hobby was not therapeutic. Id. Defendant Emanoilidis "then yelled at Plaintiff what's not very therapeutic is that you are not following the rules." Id. Plaintiff told Emanoilidis "bullsh*t." Id. Plaintiff was reprimanded by Captain Hall and told not "to speak and shut up and listen." Id. Plaintiff maintained he had due process rights and insisted he had a right to talk. Defendant Emanoilidis told Plaintiff "look this is only a minor violation[,] three minor violations and your level drops down." Id. The

hearing became more heated, and Defendant Emanoilidis got up and stated "in a threatening manner 'this hearing is over'" and left. Id.  Plaintiff was found guilty of the rule infraction.  Id.

On March 4, 2010, Plaintiff appealed the finding and asked that various FCCC Officials be given "a formal reprimand." Id. at 19, ¶45.  Defendant Emanoilidis "affirmed his decision again without providing any written documentary evidence of how he arrived at this decision." Id.  On March 16, 2010, Defendant Budz denied Plaintiff's appeal saying "the relief you request to reprimand staff involved is denied.  All procedures were followed." Id., ¶46.

In Plaintiff's annual review dated March 30, 2010, the shank incident was noted.  Id. at 20, ¶48.  However, "FCCC records" note that the charges related to this incident were "dismissed."  Id.

As relief, Plaintiff seeks "$10,500.00 as to each Defendant" in compensatory damages.  Id. at 20.  Plaintiff also seeks punitive damages and declaratory relief.  Id.

## III.

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded factual allegations in a complaint as true and take them in the light most favorable to plaintiff.  Erickson v. Pardus, 551 U.S. 89, 94 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).  Additionally, *pro se* pleadings are liberally construed by

the Court.  Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

"To survive dismissal, the complaint's allegations must plausibly

suggest that the [plaintiff] has a right to relief, raising that

possibility above a speculative level; if they do not, the

plaintiff's complaint should be dismissed."  James River Ins. Co.

v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008)

(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)).

See also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir.

2010).  Thus, a complaint is subject to dismissal for failure to

state a claim if the facts as plead do not state a claim for relief

that is plausible on its face.  Twombly, 550 U.S. at 556.  A claim

is plausible when "the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S.

662, 668 (2009).  In other words, the plausibility standard

requires that a plaintiff allege sufficient facts "to raise a

reasonable expectation that discovery will reveal evidence" that

supports the plaintiff's claim.  Twombly, 550 U.S. at 556.

However, although a complaint "does not need detailed factual

allegations . . . a plaintiff's obligation to provide the 'grounds'

of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  Id. at 555 (citations omitted).  "[T]he

tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678.  Thus, "the-defendant-unlawfully harmed me accusation" is insufficient.  Id.  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Id. Additionally, there is no longer a heightened pleading requirement. Randall, 610 F.3d 701, 710 (11th Cir. 2010).  The Court may dismiss a case when the allegations in the complaint on their face demonstrate that an affirmative defense bars recovery of the claim. Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003); Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008).

**IV**.

Based upon applicable law and liberally construing the facts alleged in the Amended Complaint as true in the light most favorable to Plaintiff, the Court finds that Plaintiff's Amended Complaint should be dismissed in its entirety as to Defendants Budz and Dixon.  However, the Court finds that Plaintiff has adequately stated a due process claim at this stage of the proceedings as to Defendant Emanoilidis.

**Defendant Budz**

Liberally reading Plaintiff's Amended Complaint, the only allegations against Budz is that he was the Director of the FCCC, he spoke with Plaintiff in the FCCC library on one occasion

concerning Plaintiff's objections that FCCC staff were not enforcing the no-smoking policy, and he reviewed and/or responded to Plaintiff's communications and grievances.

Here, there are no allegations that Budz knew of, sanctioned, participated in, or was otherwise causally connection to the constitutional violations of which Plaintiff complains. <u>Harris v. Ostrout</u>, 65 F.3d 912, 917-18 (11th Cir. 1995).  Further, liability cannot be predicated upon Budz' supervisory position because there is no *respondeat superior* liability under § 1983.  <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 690-92 (1978).  Finally, insofar as Plaintiff claims that Budz' review and denial of his grievances subjects Budz to liability under § 1983, the Eleventh Circuit agrees with other circuits that an institution's grievance procedure does not create a constitutionally-protected liberty interest.  <u>Dunn v. Martin</u>, 178 F. App'x 876, 878 (11th Cir. 2006); <u>accord</u> <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994)(stating that the Constitution creates no entitlement to voluntarily established grievance procedure); <u>Flick v. Alba</u>, 40 F.3d 72, 75 (8th Cir. 1991)(same).  "'The simple fact that state law prescribed certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension.'" <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993)(quoting <u>Vruno v. Schwarzwalder</u>, 600 F.2d 124, 130-131 (8th Cir. 1979)(quoting <u>Slotnick v. Staviskey</u>, 560 F.2d 31, 34 (1st Cir. 1977), <u>cert. denied</u>, 434 U.S. 1077 (1978));

see <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999)(finding
that prison officials who were not involved in an inmate's
termination from his commissary job, and whose only roles involved
the denial of administrative grievances or the failure to act, were
not liable under § 1983 on a theory that the failure to act
constituted an acquiescence in the unconstitutional conduct), <u>cert.
denied</u>, 530 U.S. 1264 (2000). Consequently, the Court finds
Plaintiff's Amended Complaint fails to state a claim against
Defendant Budz and must be dismissed.

**Defendant Dixon**

According to the Amended Complaint, Dixon was the "AFA
investigator" who met with Plaintiff after he was in confinement,
presented him with the behavior management form, and asked
Plaintiff a series of questions before asking Plaintiff to sign the
form.  Dixon also told Plaintiff that the shank incident was a
major rule violation and required secure management. Despite
Plaintiff's express acknowledgment that Dixon appraised him of his
rights in connection with the shank incident, Plaintiff
contradictorily claims that Dixon did not tell him why he was in
confinement, did not bring him any paper work, did not serve notice
of the charges, and did not tell him when the hearing would be
held, or when he could leave segregation.

While residents at the FCCC are subject to internal
regulations, the Court recognizes that they are afforded a higher

standard of care than those who are criminally committed.  The Supreme Court has concluded that, as a general rule, civil detainees are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."  Youngblood v. Romero, 457 U.S. 307, 322 (1982).  Indeed, the involuntarily civilly committed have liberty interests under the due process clause of the Fourteenth Amendment to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as might be required to ensure safety and freedom from restraint.  Id.  The Eleventh Circuit similarly has held that "Youngberg establishes that the due process rights of the involuntarily civilly committed are 'at least as extensive' as the Eighth Amendment 'rights of the criminally institutionalized,' and therefore, 'relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed."  Lavender v. Kearney, 206 F. App'x 860 *2 (11th Cir. 2006)(footnote omitted)(quoting Dolihite v. Maughon, 74 F.3d 1027, 1041 (11th Cir. 1996)).

Regardless of the ambiguity in the Amended Complaint, it is clear that Dixon did not see Plaintiff until after he was placed in confinement.  It appears that Dixon's only involvement in this matter was to apprise Plaintiff of the charges against him and advise him of his due process rights.  Plaintiff does not allege

that Dixon was charged with investigating the incident.  Nor does Plaintiff allege that Dixon had authority to convene the behavior management conference or recommend Plaintiff's release from confinement.  Although unclear as to why Plaintiff was not afforded a behavior management conference prior to being released from his ten-day confinement and fourteen-day wing restriction, Plaintiff acknowledges that his record at the FCCC reflects that the charge that he was in possession of a homemade weapon was ultimately "dismissed."  Amended Complaint at 20, ¶48.[5]  Based on the Amended Complaint, the Court cannot conceive of any constitutional deprivation stemming from the actions or inactions of Defendant Dixon.  Consequently, the Court will dismiss the Amended Complaint against Dixon.

**Defendant Emanoilidis**

Defendant Emanoilidis seeks dismissal of Plaintiff's due process claim set forth in paragraph two of the Statement of Claims in Amended Complaint.   In support, Emanoilidis cites to this Court's holding in Douse v. Butterworth, 2009 WL 2496459 *5 (M.D. Fla. 2009), wherein the Court found that Douse's "temporary confinement was not for punitive purposes or otherwise the type of atypical and significant deprivation to trigger Plaintiff's

---

[5]It appears that at no time was Plaintiff afforded a hearing to defend against the charges.

constitutional due process rights." Id. at *6 (citing Sandin v. Conner, 515 U.S. 472, 481 (1995)).[6]

The Court finds the facts of the instant action are distinguishable from the facts in Douse. Here, Plaintiff alleges that he advised Defendant Emanoilidis, the Assistant Clinical Director, a few days prior to the shank being planted under his mattress that Defendant Haynes had labeled Plaintiff a "snitch" and residents were making threatening remarks to Plaintiff. Plaintiff further avers that Defendant Emanoilidis agreed to report and investigate the Haynes' incident. Additionally, Plaintiff states that soon after his placement in secure management confinement he wrote a resident communication to Defendant Emanoilidis requesting Emanoilidis to come and see him. Defendant Emanoilidis did not contact Plaintiff at anytime during his ten-day confinement or fourteen-day wing restriction. Indeed, it appears that Plaintiff never received a hearing during which he could have defended against the charge. The Court also takes judicial notice of its files and notes that, in addition to his placement on the committee that determines whether disciplinary infractions are valid, Defendant Emanoilidis is also vested with authority to recommend in his professional judgment that a resident be removed from secure management confinement. See Case No. 2:10-cv-528-FtM-SPC,

---

[6]Defendant Emanoilidis appears to read the Douse opinion as deeming a resident's ten-day confinement as constitutional *per se.* The Court disagrees to such a liberal reading of Douse.

Deposition Excerpt of Dr. Emanoilidis (Doc. #83-1 at 4-6) (testifying to his responsibilities as Chairperson of the Behavior Management Committee and as Program Services Committee).

The Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979), within the bounds of professional discretion. Youngberg, 457 U.S. at 321-22. "Due process requires that the conditions and duration of confinement [for civilly committed persons] bear some reasonable relation to the purpose for which persons are committed." Seling v. Young, 531 U.S. 250, 265 (2001).

Consequently, the Court finds that the Complaint alleges sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports Plaintiff's claim his placement in secure management and wing restriction was done for punitive purposes. Twombly, 550 U.S. at 556.   Thus, the Court will deny Defendant Emanoilidis' Motion.

**Defendants Jane Doe, Quick, and Spissinger**

Plaintiff's allegations against the above-named Defendants are insufficient to subject them to liability in a § 1983 action. The only involvement Defendants Quick and Doe had was to "shake down" Plaintiff's room, during which they located the homemade weapon. After locating the weapon, Defendants Quick and Doe brought

Plaintiff to the "OIC,"[7] Defendant Spissinger.  Defendants Quick and Doe told Spissinger that they thought the shank was a set up to get Plaintiff out of the dorm.  Amended Complaint at 10, ¶14.  They also advised Spissinger that residents were chanting to "get the snitch outa' here before someone kills him."  Id.  Officer Spissinger directed that Plaintiff be taken to medical and then placed Plaintiff in secure management while an investigation took place.  Id.  There are no allegations that Defendants Quick, Doe or Spissinger were involved with labeling Plaintiff a snitch, or planting the home madeweapon.  Nor does Plaintiff aver that any of these named Defendants had the authority to order Plaintiff removed from secure management confinement.  Due to the absence of an allegation of any connection between an alleged unconstitutional deprivation and these Defendants' actions, the Court will dismiss Defendants Quick, Doe and Spissinger pursuant to 28 U.S.C. § 1915(e)(i)(B)(ii).

ACCORDINGLY, it is hereby

**ORDERED and ADJUDGED:**

1.   Defendants Budz and Dixon's Motion (Doc. #48) is **GRANTED** to the extent that Plaintiff's Amended Complaint is **DISMISSED** without prejudice as to Defendants Budz and Dixon.

2.   Defendant Emanoilidis' Motion (Doc. #49) is **DENIED** and Defendant Emanoilidis shall file an amended answer to include

---

[7]Officer In Charge.

Plaintiff's Second Claim **within ten (10) days** of the date of this

Order.

     3.    Defendants Jane Doe, Quick and Spissinger are **DISMISSED**

without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B).

     4.    The Clerk shall enter judgment and correct the caption of

the case accordingly.

     **DONE AND ORDERED** at Fort Myers, Florida, on this   20th   day

of September, 2012.


                                    _____

                                    JOHN E. STEELE

                                    United States District Judge


SA: hmk
Copies: All Parties of Record